|2PITCHER, Judge.
The defendant, Michael Jarreau, was charged by bill of information with driving while intoxicated, fourth offense, a violation of LSA-R.S. 14:98. He pled not guilty and, after trial by jury, was found guilty as charged. The defendant was sentenced to ten years at hard labor with one year to be served without benefit of parole, probation, or suspension of sentence. He was given credit for time served. He has appealed, urging twelve assignments of error.[1]

FACTS

On or about March 8, 1995, in East Baton Rouge Parish, Louisiana State Police Trooper Michael Baron observed the automobile driven by the defendant cross the fog line twice by approximately one foot each time. After Trooper Baron stopped the vehicle, the defendant stepped out of the vehicle and staggered toward him. Trooper Baron noticed that the defendant swayed, had red glassy eyes, slurred his speech, and smelled strongly of alcohol. Trooper Baron then performed four field sobriety tests on the defendant which the defendant failed or was unable to complete. Subsequently, the defendant took a breath alcohol test and was determined to have a blood alcohol level of .109 percent.

ASSIGNMENT OF ERROR NUMBER TEN

In assignment of error number ten, the defendant contends that the trial court erred in refusing to permit the defense to call Dr. William George as an expert in the field of *35 toxicology and pharmacology to express an expert opinion related to a proposed absorption defense. In his brief to this court, the defendant argues that during a hearing held outside the presence of the jury, the state accepted Dr. George as an expert. However, after a hearing, the court ruled that Dr. George’s testimony was irrelevant and, thus, prevented the defendant from presenting the defense that, at the time the intoxilizer |3test was taken, his body was in the absorption phase rather than the elimination phase. The defense claims that it was attempting to show that, although his blood alcohol level measured .109 percent approximately thirty minutes after he was stopped, at the time of the stop his blood alcohol level was not above .10 percent.
In the instant case, a hearing was held out of the presence of the juiy regarding Dr. George’s testimony. Subsequently, Dr. George’s testimony was proffered into the record. Dr. George was accepted as an expert in pharmacology and toxicology. Dr. George interviewed the defendant by telephone and the defendant told him that he had several drinks prior to leaving a bar and was stopped shortly thereafter. Dr. George testified as to the absorption and elimination rate for alcohol and gave examples of how long it would take particular amounts of alcohol to be eliminated from the body and the blood alcohol level of a one hundred and fifty pound person who drank a certain amount of alcohol in a limited amount of time. Dr. George also testified that, based on the information given to him by the defendant, his opinion was that the defendant’s blood alcohol level at the time of the stop was .81 percent. He also testified that a person who drinks all day could have an alcohol type odor about him. Dr. George opined that, because of the proximity of the stop and the defendant’s blood alcohol level at the time of the intoxilizer test, the defendant probably had a last drink or two just before leaving the bar. Dr. George discussed the biological process of absorption and stated that absorption of alcohol was not instantaneous and that it takes time to absorb. On cross-examination, Dr. George discussed the effects of alcohol on people at particular levels.
The court ruled that Dr. George would not be allowed to express an opinion based on information he received from his interview with the defendant. Defense counsel then asked if Dr. George could testify as to general information regarding absorption and elimination. The court ruled that it was irrelevant and sustained the state’s objection to the evidence.
After reviewing Dr. George’s proffered testimony, we find that the court did not 14err in refusing to allow Dr. George to relate to the jury information that he received from the defendant in a telephone interview and then give his opinion regarding the defendant’s level of intoxication based on that information. However, we do find that the court erred in ruling that Dr. George’s testimony regarding general information as to the body’s absorption and elimination of alcohol was irrelevant to the instant case and, thus, precluding Dr. George from testifying.
The trial court’s ruling was a clear abuse of discretion that resulted in prejudice to the defendant’s fundamental right to present a defense. See La. Const, art. I, sec. 16. LSA-C.E. art. 103 provides that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. See State v. Van Winkle, 94-0947, p. 5 (La.6/30/95), 658 So.2d 198, 201.
If a witness was in a position to offer testimony that might have substantially helped the particular defense asserted by the defendant, an erroneous exclusion of the offered testimony may be prejudicial. See State v. Shoemaker, 500 So.2d 385, 389 (La. 1987); State v. Searcy, 621 So.2d 83, 87 (La.App. 2d Cir.1993). A defendant’s right to present a defense is sanctioned constitutionally, and he can testify to or give evidence on any matter relevant to an issue material in the ease. State v. Maize, 94-0736, p. 17 (La.App. 1st Cir. 5/5/95), 655 So.2d 500, 512, writ denied, 95-1894 (La.12/15/95), 664 So.2d 451; State v. Bennett, 517 So.2d 1115, 1118 (La.App. 1st Cir. 1987), writ denied, 523 So.2d 1335 (La.1988).
LSA-C.E. art. 401 provides:
*36 “Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
LSA-C.E. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
15In questions of relevancy, much discretion is vested in the trial court. Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Maize, 94-0736 at p. 18, 655 So.2d at 512.
The state’s use of a blood alcohol test registering 0.10 percent or more, at the time of the test, necessarily involves an interlocking inference that the defendant’s blood alcohol level was the same or higher at the time of the stop. Cf. State v. Ristom, 607 So.2d 655, 659 (La.App. 3rd Cir.1992), writ denied, 614 So.2d 76 (La.1993). The use of a blood alcohol test as evidence of guilt presumes the defendant was in the elimination phase at the time of the test. Under this analysis, the burden shifts to the defendant to present any affirmative defenses, i.e., that his body was in the absorption phase rather than the elimination phase at the time the test was taken. State v. Ristom, 607 So.2d at 659.
We find the ruling of the court to be incorrect and that Dr. George’s testimony was relevant to the defendant’s case. The court’s preclusion of Dr. George’s testimony regarding the absorption and elimination of alcohol by the body was a clear abuse of discretion that resulted in prejudice to the defendant’s fundamental right to present a defense. Therefore, we must vacate the defendant’s conviction and sentence and remand the case to the trial court for a new trial.
Because of the resolution of the issue presented in assignment of error number ten, we pretermit a discussion of the issues in assignments of error numbers two, three, five, six, seven, eight, nine and eleven.
CONVICTION AND SENTENCE VACATED; REMANDED FOR A NEW TRIAL.

. In his brief to this court, the defendant expressly abandoned assignments of error numbers one, four, and twelve.